**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| MELISSA ALLEN, | * |
| Plaintiff, | * |
| v. | Case No.: GJH-18-3971 |
| | * |
| RBC CAPITAL MARKETS, LLC *et al.*, | |
| | * |
| Defendants | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This action is brought by Plaintiff Melissa Allen against Defendants RBC Capital Markets, LLC ("RBC"), Warren Bischoff, and John Gerold alleging various violations of Maryland law. Plaintiff filed this action in the Circuit Court for Montgomery County, Maryland. ECF No. 1-7. RBC timely filed a Notice of Removal and a Motion to Dismiss. ECF Nos. 1, 12. Plaintiff filed a Motion to Remand, contending that the Court lacks subject-matter jurisdiction over her claims, and that removal was therefore improper. ECF No. 9. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Plaintiff's Motion to Remand, ECF No. 9, is granted.

**I.    BACKGROUND[1]**

Plaintiff is a Chinese-American woman who worked for Defendant RBC in Chevy Chase, Maryland. ECF No. 1-7 ¶¶ 10-11. Her first line supervisor was Defendant John Gerold, Managing Director-Financial Advisor, and her second line supervisor was Defendant Warren Bischoff, Senior Managing Director-Complex Director. *Id.* ¶¶ 6-7.

---
[1] Unless otherwise stated, the background facts are taken from Plaintiff's First Amended Complaint, ECF No. 1-7, and are presumed to be true.

1

In May 2018, Defendant Gerold met with a client to recommend some changes to his portfolio. *Id*. ¶ 17. At that meeting, the client asked for communications to be sent to his AOL email account, rather than his Gmail email account. *Id*. On July 25, 2018, the client sent an email from his Gmail account agreeing to the recommended changes and reiterating that future correspondence should be sent to his AOL email account. *Id*. ¶ 18. Defendant Gerold called the client to confirm the changes to the account—a call that Plaintiff overheard. *Id*. ¶ 19. The following day, Defendant Gerold forwarded an email to Plaintiff from the client's AOL email address stating that he wanted $98,625 sent from his RBC investment account to his checking account. *Id*. ¶ 20. Gerold directed Plaintiff to execute this transaction. *Id*. He did not ask Plaintiff to contact the client to confirm the transaction. *Id*. Unbeknownst to any of the parties, this email actually came from a hacker posing as the client. *Id*. ¶ 22.

Plaintiff and other RBC staff proceeded to begin executing the transaction. The hacker sent routing information for a new banking account at Bank of America to Plaintiff, who reported it to Gerold during a morning meeting on July 27, 2018. *Id*. ¶ 24. RBC's compliance department initially rejected the transfer request because the client's wife was a joint account holder and had not signed the form. *Id*. ¶ 25. When Plaintiff reached out to get her signature, the hacker—posing as the client—said she was unavailable. *Id*. The compliance department decided to approve the transfer, and Plaintiff once more informed Gerold of the proceedings involving the transfer. *Id*. ¶¶ 25-26. Another member of the RBC team, after realizing there were insufficient funds to complete the transfer, placed an order to sell stocks in the client's portfolio to raise the funds. *Id*. ¶ 27. That team member did not call the client to confirm the sale but certified on the transfer form that he had done so. *Id*.

Once the account had sufficient funds to cover the transfer, Plaintiff submitted the wire transfer form and checked the box "Spoke with Client to Confirm" as, Plaintiff alleges, was standard practice when the managing team member said that they had already done so. *Id*. ¶ 28. Plaintiff alleges that RBC management, including Defendants Bischoff and Gerold, "frequently instructed [Plaintiff] and other employees to (1) skip confirming instructions with clients, (2) enter notations that Gerold had spoken with the client when he had not done so, (3) log into the RBC system as Gerold to expedite trades, and (4) share passwords, including with unauthorized personnel." *Id*. ¶ 21.

In a stroke of good fortune for the client, RBC received a rejection notice from Bank of America because the name and account information for the ACH transfer did not match. *Id*. ¶ 29. Plaintiff called the client to determine the cause of the problem, and only then did it become clear that the client's email account had been compromised. *Id*. On August 2, Defendant Bischoff informed Plaintiff that her employment was being terminated. *Id.* ¶ 36. One day later, Bischoff texted Katherine Paguyo and offered Paguyo Plaintiff's former position; Paguyo declined and said she was angry with Bischoff about Plaintiff's termination. *Id*. ¶ 37. Bischoff replied, "Don't be mad at me. I didn't wire $98,000 to a hacker. I tried to save her." *Id*. RBC also disclosed on Plaintiff's U5 form, a background database for registered brokers, that Allen was terminated for "violation of the Firm's wire transfer policy." *Id*. ¶ 38.

Plaintiff filed her first complaint in state court against RBC on November 13, 2018, alleging discrimination on the basis of race and gender, wage and hour claims, and defamation in violation of Maryland state law. ECF No. 1-3. On December 26, 2018, she filed an amended complaint adding defamation claims against Warren Bischoff and John Gerold. ECF No. 1-7. On the same day, before Bischoff and Gerold had been served, RBC filed a notice of removal to this

3

Court. ECF No. 1. Plaintiff has moved to remand, ECF No. 9, and Defendant has moved to dismiss, ECF No. 12.

## II. DISCUSSION

A defendant may remove any civil action from state court to a federal district court if the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). The burden is on the defendant to prove that the district court may exercise jurisdiction. *Strawn v. AT&T Mobility, LLC*, 530 F.3d 293, 296-97 (4th Cir. 2008). "Because removal jurisdiction raises significant federalism concerns," it must be strictly construed. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). "If federal jurisdiction is doubtful, a remand is necessary." *Id*. Defendant contends that this action was properly removed because 28 U.S.C. § 1441(b)(2) only bars removal where "any of the parties in interest properly joined and *served* as defendants is a citizen of the State in which such action is brought" (emphasis added). Neither Maryland defendant had been served at the time of removal.

But the plain text of Section 1441(b)(2) makes clear that the statute is not itself a source of jurisdiction; rather, it governs the proper removal of a case where diversity jurisdiction has already been established. *Id*. ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) . . ."). The Court must still have jurisdiction over the case. Thus, the lack of service on the Maryland defendants does not permit removal if the Maryland defendants destroy diversity jurisdiction. Defendants' citation to *Clawson* to argue that the lack of service is dispositive is misleading, as the passage quoted addresses the treatment of unserved defendants for the purpose of determining unanimous consent to removal, not establishing diversity jurisdiction. *See Clawson v. FedEx Ground Package Sys.*, 451 F. Supp. 2d 731, 736 (D. Md. 2006). Indeed, *Clawson* explicitly states that "[i]f [defendant] had destroyed complete

4

diversity, then his presence would have precluded removal whether or not he had been served." *Id*.

Section 1332(a) gives a federal court jurisdiction over an action where there is complete diversity of citizenship of the parties and an amount in controversy in excess of $75,000, exclusive of interest and costs.[2] All three of Plaintiff Allen and Defendants Bischoff and Gerold are citizens of Maryland. ECF No. 1-7 ¶¶ 4, 6, 7. But RBC, a Minnesota corporation with its principal place of business located in Minneapolis, Minnesota, contends that Bischoff and Gerold have been fraudulently joined, and therefore the diversity of citizenship between it and Plaintiff establish subject-matter jurisdiction.

"The doctrine of fraudulent joinder permits a federal court to disregard, for jurisdictional purposes, the citizenship of non-diverse defendants." *McFadden v. Fed. Nat'l Mortg. Ass'n*, 525 F. App'x 223, 227 (4th Cir. 2013). To establish fraudulent joinder, a defendant "must show either that: (1) 'there is no possibility that the plaintiff would be able to establish a cause of action' against the non-diverse party, or (2) there has been 'outright fraud in the plaintiff's pleading of jurisdictional facts.'" *Id*. (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)). RBC seeks to establish the former, contending that the defamation allegations against Bischoff and Gerold do not state a claim. "The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Hartley*, 187 F.3d at 424. Furthermore, this standard is "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th

---

[2] There is no claim that federal question jurisdiction exists in this case.

Cir. 2015). Plaintiff need assert "only a possibility of a right to relief" or show a "glimmer of hope" of succeeding. *Id*.

With respect to both Bischoff and Gerold, Plaintiff's defamation allegations contain at least a "glimmer of hope." *Id*. To establish a claim for defamation, Plaintiff must allege facts showing "that the defendant made a defamatory statement to a third person; that the statement was false; that the defendant was legally at fault in making the statement; and that the plaintiff thereby suffered harm." *Gohari v. Darvish*, 363 Md. 42, 54 (Md. 2001). Plaintiff plausibly alleges that Bischoff and Gerold, as her first and second line supervisors, were responsible for disclosing false statements to third parties on her U5 form: namely, that she had violated RBC's wire transfer policy when she claims she had in fact followed the accepted practices and protocols of RBC. ECF No. 1-7 ¶¶ 76-77. Additionally, it is not appropriate at this stage to determine whether Bischoff and Gerold may be able to successfully establish a qualified privilege defense. *See Riverdale Baptist Church v. Certainteed Corp.*, 349 F. Supp. 2d 943, 950 (D. Md. 2004) ("[O]rdinarily, courts do not consider a nondiverse defendant's defenses on the merits in determining whether that defendant's joinder was fraudulent.").

Furthermore, Plaintiff has also adequately pled, for the purposes of defeating a fraudulent joinder allegation, that the text message sent by Bischoff to Ms. Paugyo contained a statement falsely suggesting that Plaintiff had wired $98,000 to a hacker. *See Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993) (recognizing that a "defamatory implication must be present in the plain and natural meaning of the words used"). Because Plaintiff has more than a "glimmer of hope" of success after "resolving all issues of fact and law" in her favor, *Riverdale Baptist Church*, 349 F. Supp. 2d at 947, the joinder of Bischoff and Gerold was not fraudulent and the Court lacks subject-matter jurisdiction to consider this case.

## III.     CONCLUSION

Plaintiff's Motion to Remand, ECF No. 9, is granted. A separate Order shall issue.

Date: <u>August   8, 2019</u>              <u>       /s/                                             </u>
                                            GEORGE J. HAZEL
                                            United States District Judge